IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DEBORAH REARICK, | : | No. 1:08-cv-1195 |
| Plaintiff, | : | |
| | : | (Chief Judge Kane) |
| v. | : | |
| | : | |
| THE PENNSYLVANIA STATE | : | |
| UNIVERSITY and PENN STATE | : | |
| UNIVERSITY, | : | |
| Defendants | : | |

### MEMORANDUM

Pending before the Court is Defendant The Pennsylvania State University's[1] motion for summary judgment. (Doc. No. 40.) The motion has been fully briefed and is ripe for disposition. For the foregoing reasons, the Court will grant the motion.

### I. BACKGROUND[2]

Plaintiff Deborah Rearick filed her complaint on June 24, 2008, alleging claims under Title VII, 42 U.S.C. § 2000e et seq., the Pennsylvania Human Relations Act, 43 P.S. § 951 et seq., and state contract law. (Doc. No. 1 ¶ 2.) The basis of Plaintiff's claims is that she was retaliated against for reporting sexual harassment to Defendant's Affirmative Action Office in

---

[1] Pursuant to Plaintiff's complaint, the Court's docket indicates that defendants include "The Pennsylvania State University" and "Penn State University." (See Doc. No. 1.) It appears to the Court that these two entities are one and the same. (See id. ¶¶ 8, 9; Doc. No. 42 ¶ 2.) Accordingly, the Court will refer to a singular Defendant in its memorandum and order.

[2] When considering a motion for summary judgment, a court must "consider all evidence in the light most favorable to the party opposing the motion." A.W. v. Jersey City Pub. Sch., 486 F.3d 791, 794 (3d Cir. 2007). However, under Local Rule 56.1, statements of material fact supporting or opposing a motion must include a reference to the supporting portion of the record. Therefore, where Defendant has supported its statement of facts with a cite to the record and Plaintiff has failed to accompany a denial with similar evidence, the material facts are deemed admitted. See M.D. Pa. L.R. 56.1.

1

June 2001.  (Doc. No. 1 ¶ 29.)  Plaintiff began working for Defendant, a state-related educational institution, on June 8, 1981.  (Doc. No. 42 ¶ 3.) Since February 1992, Plaintiff has worked under the job title of Property Inventory Aide.  (Id. ¶ 4.)  In June 2001, Plaintiff filed a claim of sexual harassment with Defendant's Affirmative Action Office against her supervisor, George Milburn.  (Id. ¶ 27.)  Plaintiff asserts that she was not chosen for an open position because of her previous complaints of sexual harassment.

In March 2006, Plaintiff accepted a transfer to the position of Staff Assistant VII in the Research Accounting Division of Defendant's Office of Corporate Controller.  (Doc. No. 42 ¶ 5.)  As part of this transfer, Plaintiff executed an Agreement and General Release (the "Release") on March 14, 2006.  (Id. ¶ 6.)  The agreement released all claims that Plaintiff had against Defendant, including any claim based upon sexual harassment or retaliation.  (Doc. No. 43, App. 3 ¶ 4.)  Plaintiff consulted with Attorney Kathy Simpson of Harrisburg prior to executing the Release.  (Doc. No. 42 ¶ 7; Doc. No. 48 ¶¶ 5, 7.)  The Release stated that it "constitute[d] the sole understanding of the parties . . . and supersede[d] any prior or contemporaneous understandings, whether written or oral, of the parties" respecting the subject matter of the agreement.  (Doc. No. 43, App. 3 ¶ 6.)

Prior to her transfer in March 2006, and as an employee of the College of Health and Human Development, Plaintiff was assigned a yearly score under the Staff Review and Development Plan ("SRDP").  The SRDP scores ranged from a low of 1 to a high of 5.  (Doc. No. 42 ¶ 20.)  For 2003, Plaintiff received a score of 3, which equated to a rating of "performance meets expectations."  (Id. ¶¶ 19-20.)  For 2004 and 2005, Plaintiff received a score of 2, which equated to a rating of "performance partially meets expectations."  (Id.)  Milburn, the

person who Plaintiff accused of harassment in 2001, was not in a supervisory position relative to Plaintiff when her SRDP scores were completed in 2003, 2004, and 2005. (Id. ¶ 38.) Instead, Plaintiff's scores for those years were assigned by Robin Cabral and William Gush. (Id. ¶ 40; Doc. No. 43, App. 4, 5, & 6.)

On September 6, 2006, an opening was posted for a Staff Assistant VIII, grade 18, position in Defendant's School of Hospitality Management, College of Health and Human Development. (Doc. No. 42 ¶ 8.) The individuals involved in the interview process for the open position were Dr. Hubert Van Hoof, Director of the School of Hospitality Management, and his administrative assistant, Dawn Driver. (See id. ¶¶ 9-10.) Plaintiff applied for the staff assistant position and was one of three individuals subsequently contacted by Driver on September 26, 2006, to consider bidding on the job. (Id. ¶¶ 11-13; Doc. No. 48 ¶ 13.) Plaintiff met with Van Hoof and Driver to interview for the staff assistant position on September 29, 2006. (Doc. No. 42 ¶ 14; Doc. No. 48 ¶ 14.)

Plaintiff was one of two candidates invited back for a second interview. (Doc. No. 42 ¶ 16.) In preparation for the second interview, Driver requested the SRDP scores for the two remaining candidates from the College of Health and Human Development. (Doc. No. 42 ¶ 17.) It was standard practice for Van Hoof and Driver to obtain the SRDP scores for employment candidates. (Id. ¶ 18.) Van Hoof and Driver were provided with Plaintiff's SRDP scores for 2003, 2004, and 2005. (Id. ¶ 19.) They were also provided with the SRDP scores for the same time period for the other remaining candidate, Carol Little. (Id. ¶ 44.) While Plaintiff's scores for 2003, 2004, and 2005 were 3, 2, and 2 respectively, Little had received 4 point marks for all three years. (See Doc. No. 43, App. 14.)

3

On October 3, 2006, Plaintiff had her second interview with Van Hoof and Driver. (Doc. No. 42 ¶ 21.) The other remaining candidate, Little, was also interviewed a second time. (Id.) After this second round of interviews, the position was offered to, and accepted by, Little. (Id. ¶ 22.) Plaintiff's failure to be chosen for the open position serves as the basis for her lawsuit.

## II. STANDARD OF REVIEW

Defendant has moved for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, which provides that "[t]he judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. Id. at 248-49.

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004). Once the moving party has shown that there is an absence of evidence to support the nonmoving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." Berckeley Inv. Group, Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006) (citations omitted); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). If

4

the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," summary judgment is appropriate. Celotex, 477 U.S. at 322-23. Summary judgment is also appropriate if the non-moving party provides merely colorable, conclusory, or speculative evidence. Anderson, 477 U.S. at 249-50. There must be more than a scintilla of evidence supporting the nonmoving party and more than some metaphysical doubt as to the material facts. Id. at 252; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In making this determination, the Court must "consider all evidence in the light most favorable to the party opposing the motion." A.W. v. Jersey City Pub. Sch., 486 F.3d 791, 794 (3d Cir. 2007) (citation omitted).

## III.     DISCUSSION

Plaintiff raises three different claims in her complaint. In the first two claims, Plaintiff alleges that Defendant retaliated against her for complaining of sexual harassment by Milburn in 2001. In the third claim, Plaintiff alleges that by relying on her past SRDP scores in making a hiring decision, Defendant breached the contractual agreement set forth in the 2006 Release. The Court has jurisdiction over Plaintiff's Title VII claim pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367. See Anker Energy Corp. v. Consolidation Coal Co., 177 F.3d 161, 169 n.1 (3d Cir. 1999). The Court will address each claim in turn.

### A.     Title VII and PHRA Retaliation Claims

In her first two claims, Plaintiff alleges that Defendant violated Title VII and the PHRA by retaliating against her for opposing discrimination in the workplace. (Doc. No. 1 ¶¶ 35, 39.)

5

In deciding an employer's motion for summary judgment under Title VII and the PHRA, the standards under the federal and state statutes are the same. See Jones v. Sch. Dist. of Phila., 198 F.3d 403, 409 (3d Cir. 1999). Accordingly, the Court's decision with respect to Plaintiff's Title VII claim applies as well to her PHRA claim.

"To establish a prima facie case of retaliation under Title VII, a plaintiff must show that (1) she engaged in a protected activity under Title VII; (2) the employer took an adverse action against her; and (3) there was a causal connection between the employee's participation in the protected activity and the adverse employment action." Wilkerson v. New Media Tech. Charter Sch. Inc., 522 F.3d 315, 320 (3d Cir. 2008) (citation omitted). For purposes of its summary judgment motion, Defendant has conceded that Plaintiff is able to meet her prima facie showing as to the first two elements of a Title VII retaliation claim. (See Doc. No. 41 at 6-8.) Defendant focuses instead on the third prong of Plaintiff's prima facie case, arguing that Plaintiff "cannot present sufficient evidence [of] . . . a causal connection between her protected activities and her non-selection in October[] 2006 for the Staff Assistant VII [sic] position in the College of Health and Human Development." (Id. at 8.)

In order to show that she was denied the School of Hospitality Management position because of her complaints of sexual harassment in 2001, Plaintiff "need not prove that retaliation was the *sole* reason for [Defendant's] decision; she must prove, however, that it was a *determinative factor* of the employment decision, meaning that she would [have been hired] but for her protected activity." LeBoon v. Lancaster Jewish Cmty. Ass'n, 503 F.3d 217, 232 n.8 (3d Cir. 2007) (emphasis in original) (citations omitted). In reviewing Plaintiff's prima facie case, the Court must consider "a broad array of evidence" to determine whether a sufficient causal link

exists. Id. at 232 (internal quotation marks and citation omitted). A causal link can be established either by temporal proximity or by other evidence. As the Third Circuit Court of Appeals explained in LeBoon:

> Where the temporal proximity between the protected activity and the adverse action is "unusually suggestive," it is sufficient standing alone to create an inference of causality and defeat summary judgment. Where the temporal proximity is not "unusually suggestive," we ask whether "the proffered evidence, looked at as a whole, may suffice to raise the inference." Among the kinds of evidence that a plaintiff can proffer are intervening antagonism or retaliatory animus, inconsistencies in the employer's articulated reasons for terminating the employee, or any other evidence in the record sufficient to support the inference of retaliatory animus.

503 F.3d at 232-33 (citations omitted).

In the present case, the temporal proximity between the protected activity and the adverse action is not "unusually suggestive." Plaintiff first complained of sexual harassment to Bonnie Ortiz in Defendant's Affirmative Action Office in June 2001. (Doc. No. 41 at 7.) There is evidence that Plaintiff again made complaints of sexual harassment to Carmen Borges in the Affirmative Action Office in June 2005. (Id.) The Release was executed on March 14, 2006. Defendant was not contacted regarding the open position at the School of Hospitality Management until September 26, 2006. At the very least, the gap between any protected activity by Plaintiff and any adverse action by Defendant was at least six months. Such a gap in time is not "sufficient standing alone to create an inference of causality [to] defeat summary judgment." LeBoon, 503 F.3d at 232-33 ("[A] gap of three months between the protected activity and the adverse action, without more, cannot create an inference of causation and defeat summary judgment.") (citations omitted).

Finding that the temporal proximity alone does not suggest causality in this case, the

7

Court turns its attention to whether the proffered evidence, looked at as a whole, is sufficient to raise an inference of discrimination. The Court finds that Plaintiff has failed to present sufficient evidence that would allow a reasonable fact-finder to infer that the failure to hire Plaintiff was caused by her complaint about sexual harassment by Milburn. Third Circuit precedent has rejected finding a causal connection where the supervisors in charge of taking the alleged adverse action had no knowledge of the protected activity. See Andreoli v. Gates, 482 F.3d 641, 650 (3d Cir. 2007); Jones, 198 F.3d at 415. Here, Plaintiff has presented no evidence to suggest that Van Hoof and Driver had any knowledge of Plaintiff's previous complaints of sexual harassment. (See Doc. No. 42 ¶¶ 31-34.) Indeed, in her opposition brief, Plaintiff clearly states that "Plaintiff will accept for summary judgment purposes that neither of these two individuals [Van Hoof and Driver] had specific knowledge of" the sexual harassment claims against Milburn and the March 2006 settlement agreement. (Doc. No. 49 at 17.)

Acknowledging that Van Hoof and Driver did not have specific knowledge of Plaintiff's previous complaints, Plaintiff instead argues that she was given low SRDP scores in retaliation for her claims of sexual harassment and that any decision based on these scores was tainted by that retaliatory animus. (Doc. No. 48 ¶ 22.) Plaintiff's contention might have merit if she presented evidence that the SRDP ratings were tainted by her complaints of sexual harassment. Yet Plaintiff has failed to do so. There is no evidence to suggest that Cabral or Gush, the supervisors in charge of assigning the SRDP ratings from 2003 to 2005, had any knowledge of the previous complaints of sexual harassment. Even if they were aware of such complaints, Plaintiff has not presented any evidence to infer that the scores were tainted by retaliatory animus for the sexual harassment claims. Instead, in reading the 2003, 2004, and 2005

8

evaluations, it becomes clear that the scores were the result of a deteriorating relationship between Plaintiff and her co-workers because of personality conflicts. (See Doc. No. 43, App. 5, 6, & 7.) There is no evidence to suggest that this conflict or the SRDP scores were in retaliation for Plaintiff's allegations of sexual harassment against Milburn in 2001. See LeBoon, 503 F.3d at 234 ("[A]lthough the evidence in the record clearly shows a tense relationship between LeBoon and Featherman, it does not sustain the inference that it was caused by LeBoon's protected activity.").

Plaintiff next argues that the decision not to choose her for the open position "was clearly made over the heads of Van Hoof and Driver . . . ." (Doc. No. 48 ¶ 22.) Plaintiff contends that "[t]he University is the Defendant, and Plaintiff has shown on the record that there are inferences that show that the decisions regarding Plaintiff's employment were made and/or influenced by persons with knowledge of Plaintiff's prior complains [sic] of discrimination." (Id.) As support for this statement, Plaintiff cites to her own declaration, as well as to the depositions of Jon Martin Nirnberger, the Financial Officer and Human Resources Representative for Defendant's Corporate Controller's Office, and Kenneth F. Lehrman, Defendant's Vice Provost for Affirmative Action. The Court has reviewed the documents cited by Plaintiff and has found that they fail to support her contention that the hiring decision was made or influenced by someone with knowledge of Plaintiff's previous complaints of sexual harassment. In the portion of Nirnberger's deposition cited to by Plaintiff, Nirnberger recounts the circumstances leading to the signing of the Release in March 2006. (Doc. No. 48, Ex. 4 pp. 35-36, 39.) In the portion of Lehrman's deposition cited to by Plaintiff, Lehrman recounts a meeting that he had with Plaintiff and her husband in October or November of 2006 regarding the release of her SRDP scores.

9

(Doc. No. 48, Ex. 5 pp. 34-38.) Although Lehrman states that one of his employees had discussed Plaintiff at more than one previous staff meeting, his testimony does not lead to an inference that the hiring decision by Van Hoof and Driver was influenced by him or any other employee.[3] In her own declaration, Plaintiff avers that Van Hoof told her that he could not offer her the position based on his conversation with a human resources representative. Specifically, Plaintiff claims that Van Hoof told her that

> based upon his conversation with a Human Resources Representative[,] he was not able to offer me the position. Dr. Van Hoof informed me that I was a "bad employee" as a result of the SRDP scores that I had received. Dr. Van Hoof also informed me that her [sic] SRDP scores were still on record and would negatively impact me [sic] future promotional opportunities. . . .

(Doc. No. 48, Ex. 1 ¶ 7.) Yet Plaintiff has not presented any evidence that would allow a factfinder to reasonably infer: (1) that the conversation between Van Hoof and the anonymous human resource representative touched on the subject of Plaintiff's sexual harassment complaint against Milburn, or (2) that the anonymous human resource representative's motivation in telling Van Hoof not to hire Plaintiff was retaliatory animus. For purposes of the summary judgment motion, Plaintiff has conceded that there is no evidence to back up the first theory that Van Hoof gained notice of the sexual harassment complaint. As to the second theory, Plaintiff has provided nothing more than her own speculation. Plaintiff also makes further allegations based on her own belief about what other individuals might have retaliated against her. (See Doc. No. 48, Ex. 1 ¶¶ 8, 21.) However, mere allegations or speculation are insufficient to establish a genuine issue of material fact to withstand summary judgment. See Anderson v. Liberty Lobby,

---

[3] To the contrary, Mr. Lehrman's deposition testimony was that the release of the SRDP scores "had been accidental." (Doc. No. 48, Ex. 5 p. 35.)

Inc., 477 U.S. 242, 252 (1986) (noting that to defeat summary judgment, "there must be evidence on which the jury could reasonably find for the plaintiff").[4]

There is absolutely no evidence on the record that Plaintiff's failure to be hired to the School of Hospitality Management position was caused by her previous complaints of sexual harassment. Therefore, summary judgment will be granted to Defendant on Plaintiff's Title VII and PHRA retaliation claims.

### B. Breach of Contract Claim

Plaintiff's third cause of action is based on a state-law breach of contract theory. Plaintiff claims that by relying on her past SRDP scores in making its promotion decision, Defendant breached the "agreement that previous SRDP evaluations would not have an impact on the Plaintiff's future advancement." (Doc. No. 1 ¶ 43.)

In reviewing the 2006 Release, however, there is no provision disallowing Defendant from relying on past SRDP scores. (See Doc. No. 42, App. 3.) Instead, the Release outlines Defendant's agreement to give Plaintiff the opportunity to transfer to a new position and $7,500 to facilitate her transition to the new position. (Doc. No. 42, App. 3 ¶¶ 1-2.) Under paragraph 3, both Plaintiff and Defendant agree to "keep the terms of this Agreement completely confidential . . . ." (Id. ¶ 3.) In exchange, Plaintiff agrees to release all claims against Defendant, including those under Title VII and the PHRA, "arising out of her . . . employment through the date of her

---

[4] Plaintiff also points to the fact that no SRDP score for 2006 was released to Van Hoof and Driver as further proof that her low SRDP scores were tainted by retaliatory animus. However, her argument that the lack of the 2006 score handicapped her against the other candidate, Little, is unfounded. In the email exchange between Driver and the human resources representative, only the scores from 2003, 2004, and 2005 were provided for both Little and Plaintiff. (See Doc. No. 43, App. 14.)

11

execution" of the Release. (Id. ¶ 4.) Furthermore, paragraph 6 states that the Release "constitutes the sole understanding of the parties hereto and supersedes any prior or contemporaneous understandings, whether written or oral, of the parties respecting the within subject matter." (Id. ¶ 6.)

Because Plaintiff cannot point to any provision in the Release that includes the language that she asserts was included regarding her SRDP scores, Defendant argues that Plaintiff cannot establish a breach of contract claim. In response to Defendant, Plaintiff admits that the Release "did not specifically contain a clause related to the release specifically of the SRPD scores . . . ." (Doc. No. 49 at 19.) Yet Plaintiff argues that the Release "contain[ed] a confidentiality provision," "recognized past differences between the parties and [an] intention to keep [the differences] in the past," and contemplated a "fresh start" or "new beginning" for the future employment of Plaintiff. (Id. at 19-20.) Plaintiff also avers that "there were extensive specific discussions about the use of those past SPRDs [sic]." (Id. at 20.) Plaintiff states that "[w]hile this may not be sufficient to create a contract condition, it was clear evidence of the parties' intent, which must be taken into consideration by the Court in determining the meaning of the contract terms." (Id.)

"To determine whether or not a writing is the parties' entire contract, the writing must be looked at and 'if it appears to be a contract complete within itself, couched in such terms as import a complete legal obligation without any uncertainty as to the object or extent of the [parties'] engagement, it is conclusively presumed that [the writing represents] the whole engagement of the parties . . . .'" <u>Yocca v. Pittsburgh Steelers Sports Inc.</u>, 854 A.2d 425, 436 (2004) (citing <u>Gianni v. Russell & Co.</u>, 126 A. 791, 792 (1924)). "Once a writing is determined

12

to be the parties' entire contract, the parol evidence rule applies and evidence of any previous oral or written negotiations or agreements involving the same subject matter as the contract is almost always inadmissible to explain or vary the terms of the contract." Yocca, 854 A.2d at 436-37.

The Release at issue in this case is a contract complete within itself. Paragraph 6 of the Release clearly states that it "constitutes the sole understanding of the parties hereto and supersedes any prior or contemporaneous understandings . . . ." (Doc. No. 42, App. 3 ¶ 6.) Plaintiff has not presented any legal support that would allow the Court to find that the agreement at issue was not fully integrated. Therefore, the parol evidence rule applies and any evidence sought to be presented by Plaintiff of the oral and written negotiations is inadmissible to explain the terms of the Release. Although Plaintiff argues that these negotiations may be allowed to help to interpret the Release, Plaintiff has not shown any portion of the Release to be ambiguous and in need of further explanation or clarification. See Yocca, 854 A.2d at 437 (stating that where a term in a contract is ambiguous, parol evidence is admissible to resolve the ambiguity). As a result, Plaintiff's breach of contract claim cannot survive summary judgment and must be dismissed.

In her brief in opposition, Plaintiff for the first time raises a claim of "breach of the duty of good faith and fair dealing." (See Doc. No. 49 at 19-20.) Plaintiff alleges that Defendant's actions of forwarding her SRDP scores from 2003 through 2005 to Van Hoof evaded the spirit of the bargain that she would be given a "fresh start" or a "new beginning." (Id.) The Court finds this claim to be without merit. The Third Circuit Court of Appeals has recognized that "under

Pennsylvania law, every contract does not imply a duty of good faith."[5] Parkway Garage, Inc. v. City of Phila., 5 F.3d 685, 701 (3d Cir. 1993) (citing Creeger Brick & Building Supply Inc. v. Mid-State Bank & Trust Co., 560 A.2d 151, 153-54 (Pa. Super. Ct. 1989)), abrogated on other grounds, United Artists Theatre Circuit, Inc. v. Twp. of Warrington, 316 F.3d 392 (3d Cir. 2003). As a result, the Third Circuit predicted that "the Pennsylvania Supreme Court would not extend the limited duty of good faith to a situation . . . in which there already exists an adequate remedy at law." Id. at 702 (vacating jury finding that the defendant had breached an implied duty of good faith and fair dealing because plaintiff had an adequate remedy under 42 U.S.C. § 1983). In Northview Motors, Inc., v. Chrysler Motors Corp., 227 F.3d 78 (3d Cir. 2000), the Third Circuit reaffirmed its decision in Parkway Garage:

> In view of these precedents, we believe that if a plaintiff alleging a violation of the implied covenant of good faith also were to file a claim for fraud based on the same set of facts, Pennsylvania courts likely would decline to proceed with the claim alleging bad faith. Instead, Pennsylvania courts would consider the other claims in the plaintiff's complaint. Such an approach limits the use of the bad faith cause of action to those instances where it is essential. The covenant of good faith necessarily is vague and amorphous. Without such judicial limitations in its application, every plaintiff would have an incentive to include bad faith allegations in every contract action. If construed too broadly, the doctrine could become an all-embracing statement of the parties' obligations under contract law, imposing unintended obligations upon parties and destroying the mutual benefits created by legally binding agreements.

Northview Motors, Inc., 227 F.3d at 92. Plaintiff has not presented any legal support to show that the agreement at issue is one that includes a duty of good faith and fair dealing. To the

---

[5] In the absence of case law from the Pennsylvania courts, a district court is bound by the Third Circuit's interpretation of Pennsylvania law. Leder v. Shinfeld, 609 F. Supp. 2d 386, 400 (E.D. Pa. 2009) (citing Fremont v. E.I. Dupont DeNemours & Co., 988 F. Supp. 870, 874 (E.D. Pa. 1997)).

extent that Plaintiff alleges that Defendant improperly relied on SRDP scores that were tainted by retaliatory animus, her claim is rightly determined under the Title VII framework. Otherwise, Plaintiff's claim would simply circumvent the rule against parol evidence and impose unintended obligations against Defendant. See Yocca, 854 A.2d at 437 n.26 ("Notably, while parol evidence may be introduced based on a party's claim that there was a fraud in the execution of the contract, i.e., that a term was fraudulently omitted from the contract, parol evidence may not be admitted based on a claim that there was fraud in the inducement of the contract, i.e., that an opposing party made false representations that induced the complaining party to agree to the contract.") (citation omitted). Therefore, any claim based on a breach of good faith and fair dealing cannot survive summary judgment and must be dismissed.

## IV. CONCLUSION

The Court finds that Plaintiff has failed to put forward sufficient evidence to create a genuine issue of material fact to withstand Defendant's motion for summary judgment. An order consistent with this memorandum follows.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DEBORAH REARICK,** | : | No. 1:08-cv-1195 |
| Plaintiff, | : | |
| | : | **(Chief Judge Kane)** |
| v. | : | |
| | : | |
| **THE PENNSYLVANIA STATE** | : | |
| **UNIVERSITY and PENN STATE** | : | |
| **UNIVERSITY,** | : | |
| Defendants | : | |

## ORDER

**AND NOW**, this 17th day of June 2010, upon consideration of Defendant's motion for summary judgment (Doc. No. 40), it is **HEREBY ORDERED THAT** Defendant's motion is **GRANTED** as to all claims. Defendant's motion in limine (Doc. No. 56) is deemed moot. The Clerk of Court is directed to close this case.

S/ Yvette Kane
Yvette Kane, Chief Judge
United States District Court
Middle District of Pennsylvania
Dated: June 17, 2010